[Civ. No. 27835. First Dist., Div. One. Jan. 29, 1971.]

RAYMOND MARTINEZ QUESADA, Plaintiff and Respondent, v. VERNE ORR, as Director, etc., Defendant and Appellant.

## COUNSEL

Thomas C. Lynch, Attorney General, and Ronald V. Thunen, Jr., Deputy Attorney General, for Defendant and Appellant.

Richard E. Hawk and Lawrence E. Kern for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—This appeal relates to the provisions of Vehicle Code sections 13353 and 13354. Section 13353, subdivision (a), as relevant here, provides that one lawfully arrested on probable cause to believe that he was driving a motor vehicle upon a highway while under the influence of intoxicating liquor shall submit to a chemical test for the purpose of determining the alcoholic content of his blood. It further states that "The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, . . ." If the person refuses to submit to such a test the Department of Motor Vehicles after certain proceedings "shall suspend his privilege to operate a motor vehicle for a period of six months." (§ 13353, subd. (b).)

Section 13354, subdivision (e), provides: "If the test given under Section 13353 is a chemical test of urine, the person tested shall be given such privacy in the taking of the urine specimen as will insure the accuracy of the specimen and, at the same time, maintain the dignity of the individual involved."

The facts are undisputed. Respondent Raymond Martinez Quesada was lawfully arrested on probable cause to believe that he was driving a motor vehicle under the influence of intoxicating liquor. Advised of his choice of a blood, breath, or urine test, Quesada chose the latter. He was taken to a testing laboratory, handed a urine sample container, and directed to a small

adjoining restroom. He proceeded to a urinal where with his back to the open door he endeavored to produce a urine specimen. At the time the arresting officer and a laboratory attendant remained behind Quesada about 5 or 6 feet away. Quesada asked them to leave and to close the door; the officer refused because he was concerned that the urine specimen might be diluted with water. Finally after about 15 minutes Quesada threw the empty sample container to the floor and stated that he could not take the test because he was too modest. Blood and breath tests were again offered but were refused.

Thereafter the Department of Motor Vehicles advised Quesada of the suspension of his driver's license for six months. A hearing was requested during the course of which he testified that he had always had great difficulty urinating in public restrooms and had had problems in school when he undressed in front of others in gym classes. The hearing resulted in a determination by the department that the suspension was "proper and required."

Quesada then sought judicial review of the department's decision by petition for mandate under Code of Civil Procedure section 1094.5. The superior court granted the petition and issued its peremptory writ commanding the department to set aside its order. The instant appeal is "from the judgment rendered in favor of the petitioner granting [the] writ of mandate."

In our resolution of the questions presented to us we must be mindful of certain basic considerations concerning the tests required by section 13353.

■ "Such tests do not violate one's right against self-incrimination (*Schmerber* v. *California,* 384 U.S. 757, 760-765 . . . ; *People* v. *Sudduth,* . . ., 65 Cal.2d 543, 546-547 [55 Cal.Rptr. 393, 421 P.2d 401]; *United States* v. *Wade,* 388 U.S. 218, 221 . . .), nor one's right to be free from unreasonable searches and seizures (*Schmerber* v. *California, supra,* pp. 766-772 . . .), nor one's right to counsel (*United States* v. *Wade, supra; People* v. *Sudduth, supra,* p. 546; see also *Gilbert* v. *California,* 388 U.S. 263 . . .)." ■ Their purpose is "to reduce the toll of death and injury resulting from the operation of motor vehicles on California highways by intoxicated persons. As said in *People* v. *Sudduth* [*supra*] p. 546 . . ., 'In a day when excessive loss of life and property is caused by inebriated drivers, an imperative need exists for a fair, efficient, and accurate system of detection, enforcement and, hence, prevention.' " (*Bush* v. *Bright,* 264 Cal.App. 2d 788, 790 [71 Cal.Rptr. 123].)

■ The first issue is a question of law: Did the attempted administration of Quesada's urine test conform to the requirements of section 13354? We have concluded that it did; our reasons follow.

As we have pointed out, section 13354, subdivision (e) directs that "the person tested shall be given such privacy in the taking of the urine specimen as will insure the accuracy of the specimen and at the same time, maintain the dignity of the individual involved." The Legislature has clearly recognized the possibility of conflicting rights—the right of the state to an accurate urine sample as opposed to its important duty to maintain the dignity of the suspected individual. In construing section 13354, subdivision (e), it is our task, if possible, to harmonize and give effect to each of the statutory demands, thus enforcing the obvious will of the Legislature. (See *Ingram* v. *Justice Court*, 69 Cal.2d 832, 839 [73 Cal.Rptr. 410, 447 P.2d 650].)

A reasonable concept of human dignity would seem to require the furnishing of toilet and handwashing facilities to one who is about to furnish a urine sample. But obviously dilution with water would decrease the percentage of alcohol residue in the specimen. (See 3 Curry, Methods of Forensic Science, p. 113 et seq.) The statutory goal to "insure the accuracy of the specimen" would be defeated were Quesada left alone in the washroom behind closed doors. Since urine is 960 parts water and 40 parts solid matter (see Webster's New Internat. Dict. (2d ed.)) a ready opportunity would then have existed to defeat the statutory insistence on "the accuracy of the specimen." ■ "[S]tatutes are to be given a reasonable and common sense construction which will render them valid and operative rather than defeat them." (*People* v. *Davis*, 68 Cal.2d 481, 483 [67 Cal.Rptr. 547, 439 P.2d 651].) ■ Here the intrusion of the state's representatives was minimal; they could not observe Quesada's efforts to secure the sample since his back was turned to them. The affront to his dignity or "modesty" was not greater than that experienced daily by most males, minor and adult, when required to use the urinals of schools, service stations, restaurants, offices, public restrooms, military establishments and other places. The practice followed by the officer and the laboratory attendant gave effect reasonably to each of the contending rights of the statute.

■ Quesada next contends that since he was physically unable to take the test of his own choosing, "he should not have to choose another test or be deemed to have refused." This also is a question of law. The contention also has been examined and found to be without merit.

Section 13353 requires that one lawfully arrested for driving while intoxicated shall submit to one of the three designated types of chemical tests, or suffer the prescribed penalty. While he may choose the type of test, the driver's obligation does not end when he has expressed such a choice. He must go further and *submit* to the test. So strong is the legislative purpose

*that a test be submitted to,* that the statute (§ 13353, subd. (a), 3d par.)[1] permits it even though the subject driver, because of unconsciousness or other reasons, is unable to choose the type of, or even to refuse the test. Certainly, by agreeing to one type of test, and then, voluntarily or involuntarily, failing to submit to it, a driver may not thereby deny to the state its right to any test. Such a construction would do violence to the clear purpose of the statute and to the public policy expressed thereby. ■ "Statutes are to be interpreted to give a reasonable result consistent with legislative purpose and not evasive thereof. [Citations.]" (*Cal Pacific Collections, Inc.* v. *Powers,* 70 Cal.2d 135, 140 [74 Cal.Rptr. 289, 449 P.2d 225].)

■ We accordingly conclude that upon Quesada's inability to submit to the type of chemical test chosen by him, he was obliged, upon request so to do, to select another with which he could comply. Not having done so he refused a "request to submit to a chemical test" (see § 13353, subd. (b)) and brought upon himself the penalty of the statute.

Upon the conceded facts, and as a matter of law, we find the superior court's findings and decision to be unsupported. The peremptory writ of mandate, called judgment in the notice of appeal, must be reversed.

Reversed.

Molinari, P. J., and Sims, J., concurred.

---

[1]The text of Vehicle Code section 13353, subdivision (a) (3d par.) is: "Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal shall be deemed not to have withdrawn his consent and such tests may be administered whether or not such person is told that his failure to submit to the test will result in the suspension of his privilege to operate a motor vehicle."