Filed 3/25/14  Teran v. Valverde CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALBERTO TERAN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>GEORGE VALVERDE, as Director, etc.<br><br>        Defendant and Respondent. | A136563<br><br>(Alameda County<br>Super. Ct. No. RG11597735) |

## I. INTRODUCTION

Appellant Alberto Teran appeals from a July 2012 judgment of the Alameda County Superior Court denying his petition for a writ of mandate filed in September 2011 challenging respondent Department of Motor Vehicle's (DMV) order suspending his driving privileges for one year under Vehicle Code section 13353 for his refusal, early in the morning of June 23, 2011, to submit to a blood-alcohol test.  We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

At about 2:55 a.m. on the morning of June 23, 2011, California Highway Patrol (CHP) Officers Fuhrman and Leavitt were driving eastbound on the San Francisco Bay

---

[1] Our summary of the facts is based on the record provided by respondent in its "Supplemental Excepts of Record Containing Certified Administrative Record."  Most of appellant's factual statement is based on pages of an Administrative Record derived from the administrative hearing held before the DMV hearing officer.  However, that record is clearly incomplete; only pages 3 and 5 of its "Narrative/Supplemental" portion are included in that record, although in his brief to us appellant cites from a variety of other missing pages .  We conclude, therefore, that we must rely on the record provided by respondent.

1

Bridge. When they were just east of the bridge's S curve, their attention "was drawn to a silver Dodge Caravan (s/v) ahead of our location weaving in a serpentine manner within the #4 lane." Officer Fuhrman turned on the vehicle's red lights, and the officers attempted to initiate a traffic stop of the Dodge as the two vehicles "approached the I-80 eastbound bus only lane." Officer Leavitt, using the loudspeaker in the police car, "instructed the driver of the s/v . . . to exit the freeway at the upcoming off-ramp." But the driver did not exit, and the Dodge continued eastbound on I-80. Officer Leavitt then "re-instructed the driver of the s/v to pull over to the right hand shoulder. The driver of the s/v abruptly pulled the vehicle over and came to a complete stop in the gore point of the I-80 eastbound, I-880 southbound off ramp. I instructed the driver to exit the gore point and drive to the right hand shoulder of the I-80 eastbound bus only lane. The driver of the vehicle failed to comply, and remained parked within the gore point."

When Officer Leavitt contacted appellant, he observed several symptoms of intoxication, including bloodshot and watery eyes, slurred speech, and a strong odor of alcohol. When asked by the officer if he had consumed any alcohol, appellant simply "shrugged his shoulders." The officer then asked that question again, and appellant replied that "he had consumed one glass of wine earlier in the evening." Officer Leavitt then determined to conduct several field sobriety tests on appellant. Appellant then questioned that officer as to why he was being asked to perform these tests, and the officer replied that he "wanted to determine if he was safe enough to drive his vehicle." Appellant then "rolled his eyes at me."

Officer Leavitt then resumed his attempt to perform several field sobriety tests on appellant, which he failed to perform satisfactorily. Additionally, during those attempts, appellant became very argumentative with the officers, and continually interrupted Officer Leavitt. Officer Leavitt then determined that the "gore point" where both cars were stopped was both unsafe and too loud for him to continue his DUI investigation. Thus, per CHP policy, he placed appellant in handcuffs, so that the officers could "transport him to a safer location to continue my DUI investigation." After this was accomplished, and appellant and his car were moved, appellant continued to argue with

the officers, stating that he wanted a lawyer. Further, in the process of moving the Dodge to a safer location, Officer Leavitt spoke with a passenger seated in the front right seat of that car; that person confirmed to Officer Leavitt that "he and the driver had been drinking alcoholic beverages earlier in the evening."[2]

When appellant and his car were relocated to a safer location, appellant refused the officer's request that he exit the police vehicle, and again demanded that he be provided a lawyer. At this point, and based on the several distinct signs of appellant's intoxication, Officer Leavitt arrested him for violating Vehicle Code section 23152, subdivision (a), driving under the influence (DUI), a misdemeanor. This was done at 3:07 a.m. Appellant was placed in handcuffs and put into the right front seat of the CHP vehicle.

Officer Leavitt then advised appellant of the implied consent law, but the latter refused to submit to a chemical test. At 3:49 a.m., the officer read appellant the "Chemical Test Admonition" which was and is written on the back of DMV form DS367. Appellant responded that he would not submit to a chemical test, and that he wanted to see a lawyer. He was then transported to a San Francisco police station on Mission Street for a forced blood test; three vials of blood were drawn from appellant's arm at 4:13 a.m., i.e., about an hour and 20 minutes after the initial CHP stop. The alcohol content of appellant's blood was then .07 percent. Appellant was then booked into the San Francisco jail for violations of Vehicle Code section 23152, subdivisions (a) and (b), misdemeanor DUI, with a blood alcohol content of .08 percent or greater.

At appellant's request, the DMV held an administrative hearing on August 12, 2011.[3] At the hearing, and without any objection by appellant, CHP Officer Leavitt's reports were admitted into evidence. Appellant testified at the hearing that he had asked for a lawyer at the time he was stopped by the officers because "of the treatment . . . I was receiving from [Officer Leavitt]," i.e., he was "pushing me around" and "started yelling at me" when he requested a lawyer. But appellant conceded that the officer had

---

[2] This rather important fact is never mentioned in appellant's brief.

[3] Misstated in the DMV's brief as being on August 12, 2012.

told him that he had to take a breath or blood test and had, also, read him the chemical test admonition, in response to which he told the officers that he wanted to see a lawyer. He testified that he did not consider this response a refusal to take the chemical test.

On August 26, 2011, the DMV hearing officer issued a "Notification of Findings and Decision." In it, the hearing officer found that the CHP officers had reasonable cause to believe that appellant had been driving under the influence of alcohol in violation of Vehicle Code sections 23152, 23153 or 23140, and that, therefore, he had been placed under lawful arrest. She also found that appellant had refused or failed to complete chemical testing as requested by the CHP officers, that he had been told by those officers that his right to operate a motor vehicle would be suspended or revoked if he did not take the required chemical testing, and that he was not entitled to have a lawyer present "during the chemical test." Based on those findings, the hearing officer concluded that the DMV's suspension of his driving privilege for one year was mandatory under Vehicle Code section 13353, and that suspension was "re-imposed."

On September 29, 2011, appellant filed a verified petition for a writ of mandate in Alameda County Superior Court. It alleged that he had not been properly admonished concerning the requirement that he take a chemical test, and that "there is no evidence which would be admissible over objection in a civil action to support the finding the Mr. Teran was driving, or that he was lawfully stopped, detained, or arrested."[4] A hearing was held on the petition on May 21, 2012. Prior thereto, a tentative ruling had been issued in favor of the DMV, which was contested at the hearing. Notwithstanding that contest, the trial court (the Honorable Patrick Zika) affirmed his tentative ruling. The trial court first noted that the issues were whether appellant had been "properly admonished, and whether he refused a chemical test." It then held that the key issue was whether " 'the weight of the evidence supported the administrative decision,' " citing

_____

[4] Respondent DMV allegedly filed an answer in opposition to appellant's petition, but it has not been provided in the record on file with this court.

*Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 83 (*Garcia*), a decision by Division Five of this court.

The trial court held that there was, indeed, substantial evidence both that (1) Officer Leavitt "informed Petitioner that a refusal to be chemically tested would result in the suspension of his license, and (2) nonetheless, appellant "refused to complete a chemical test" and that such a refusal was not justified under either the factual circumstances or any legal authority. In so holding, the trial court noted that there were clearly issues regarding appellant's "credibility as a witness," bearing in mind his blood alcohol content at the time of his arrest and the promptness of Officer Leavitt's report regarding his arrest and the reasons for it. The court also specifically distinguished a case relied upon in that court (and also in this court) by appellant, *Rees v. Department of Motor Vehicles* (1970) 8 Cal.App.3d 746, 749 (*Rees*), noting that that case "is limited to cases where the driver was arrested and read his Miranda[5] rights and . . . focuses on the responsibility of the officer in that case to clarify the confusion he caused by Mirandizing the driver."

Based on those reasons, the trial court denied appellant's petition for a writ of administrative mandate.

Judgment in favor of the DMV was entered on July 20, 2012. Appellant filed a timely notice of appeal on September 17, 2012.

### III. DISCUSSION

The law is clear regarding our standard of review. As our Supreme Court has written in affirming a trial court's denial of a petition for a writ of mandate seeking to overturn the DMV's suspension of a driver's license for DUI: "On appeal, we 'need only review the record to determine whether the trial court's findings are supported by substantial evidence.' [Citation.] ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our

_____

[5] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

5

deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" ' [Citations.]" (*Lake v. Reed* (1997) 16 Cal.4th 448, 457 (*Lake*); see also *Garcia, supra,* 185 Cal.App.4th at pp. 81-82; *White v. Department of Motor Vehicles* (2011) 196 Cal.App.4th 794, 798 (*White*).)[6]

Both *Garcia* and *White* make clear that a driver's refusal or failure to take a breath or chemical test when stopped for suspected DUI is a sufficient basis upon which to suspend a driver's license. In *Garcia,* the court unanimously rejected the appellant-driver's argument that the suspension of his license because of his silence and refusal, after being given an option of DUI tests to take, to make such a choice was unjustified. In that case, the court wrote: "We reject Garcia's argument that suspension of his license was improper because he did not refuse a chemical test. 'The question whether a driver "refused" a test within the meaning of the statute is a question of fact. [Citation.]' [Citation.] To comply with the law, a 'driver should clearly and unambiguously manifest the consent required by the law. Consent which is not clear and unambiguous may be deemed a refusal.' [Citation.] 'In determining whether an arrested driver's conduct amounts to a refusal to submit to a test, the court looks not to the state of mind of the arrested driver, but to "the fair meaning to be given [the driver's] response to the demand he submit to a chemical test." [Citations.]' [Citation.]

"The trial court found that Garcia failed or refused to complete a chemical test after being requested to do so by [the officer]. Garcia attempts to focus this court's attention solely on his conduct at the jail. However, the trial court specifically stated: '*viewed in its totality,* [Garcia's] conduct amounted to a refusal to submit to a chemical test . . . .' (Italics added.)

"Garcia remained silent and refused to choose a test after [the officer] repeatedly asked Garcia which test he wanted at the scene of the arrest. This conduct alone was

_____

[6] None of these three clearly pertinent decisions is discussed or even cited in appellant's sole brief to us; no reply brief was filed by appellant.

sufficient to constitute refusal to submit to a chemical test. [Citation.] Furthermore, Garcia also failed to complete the breath test after being repeatedly warned that his failure to do so would constitute a refusal. The record shows that Garcia tried ineffectually to blow once and then refused or declined to try any further. The trial court did not find that Garcia was 'incapable, or state[d] that he . . . [was] incapable, of completing the chosen test . . . .' (§ 23612, subd. (a)(2)(A).) In fact, the trial court did not find credible Garcia's testimony that he was unable to complete the test because of nausea."

"Garcia argues that his failure to complete the breath test was insufficient to justify suspension of his driver's license in the absence of an explicit, verbal refusal or conditional agreement. His point is not well taken. Section 13353, subdivision (a)(1), itself provides: 'If a person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to, *or did not complete*, the test or tests after being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's privilege to operate a motor vehicle for a period of one year.' [Citation.] Substantial evidence supports the trial court's findings." (*Garcia, supra,* 185 Cal.App.4th at pp. 82-84, fn. omitted.)

In *White*, our colleagues in the Second District unanimously affirmed a trial court's denial of a petition for a writ of mandate seeking to overturn the DMV's suspension of a driver who had, also, refused a chemical test to determine her blood alcohol content. In that case, the driver originally opted to take a blood test, but then refused to take a breath test when it appeared the blood test could not be properly administered. The court held that the trial court was correct in sustaining the DMV's suspension of the driver's license, stating: "Here, Ms. White was proceeding on a highway at night and, if under the influence of alcohol as the arresting officer reasonably believed, presented a serious hazard to anyone and anything within range of her vehicle.

7

She rejected a breath test, believing that that was the one to which she should not consent, and opted for a blood test.  The officers complied with her request and took her to a police station where that test could be administered.  For whatever reason (and certainly not by design of the government or the result of any fault on the part of the officers, the arresting agency, or Ms. White) that test could not be administered.  Inability to perform it left one test available: the breath test.  That test was again offered to Ms. White, with an admonition of the consequence of a refusal.  She again refused it, nevertheless.  In doing so, she placed herself within the ambit of the sanction required under the implied consent law: her license was suspended."  (*White, supra,* 196 Cal.App.4th at p. 800.)

Notwithstanding this authority—and other cases reaffirming the same principles—appellant argues that his license suspension was improper in this case for several reasons.  In the order asserted in his opening brief, they are that: (1) appellant was provided "false and improper admonitions" after the CHP stop of his vehicle, (2) there was no "substantial evidence" that appellant refused to take a blood test, and (3) this court should exercise its "independent judgment" based on the administrative record before the DMV and not defer in any way to the trial court's findings.

We need not deal with this last contention, because it is directly contrary to the holdings of our Supreme Court in *Lake* and of Division Five of this court in *Garcia,* as well as numerous other cases.

We will, therefore, address the first of appellant's two substantive arguments, i.e., that incorrect admonitions given to appellant by the two CHP officers "created confusion" in the mind of appellant.  Appellant's counsel breaks down this argument into several portions; the first is that appellant was never advised of the reason he was being stopped; the second is that he was "repeatedly told" that he was not under arrest; and the third is that appellant was probably "confused and/or misled" by the CHP officers regarding the "significance of the implied consent admonishment."

We will deal with these issues in the order just noted.  First of all, the argument that appellant was never told that his vehicle was stopped because he appeared to be driving erratically, and therefore because he might be driving under the influence of

8

alcohol is flatly wrong. Officer Leavitt's report clearly states that, when he first approached the driver, who had stopped in the "gore point" and talked with him through the driver's-side window, he immediately "advised him of the reason for the stop" and then asked him "if he had consumed any alcoholic beverages earlier in the evening," to which appellant's response was to stare out of his car's front windshield and then shrug his shoulders. After being asked to exit his vehicle, but before he did so, appellant "questioned me as to why I pulled him over and I re-told him the reason for the stop."

These portions of Officer Leavitt's report answers, and clearly undermines, appellant's first argument regarding the allegedly false and improper admonitions.

His second argument is that he was falsely advised that "he was not under arrest." Although never stated in so many words, appellant appears to be arguing that the fact that he was handcuffed while being transferred to a "safer" location meant, necessarily, that he was being placed under arrest, and the fact that he was told to the contrary led to "officer induced confusion." Appellant concludes that, thus, his suspension should be set aside, citing *Hoberman-Kelly v. Valverde* (2013) 213 Cal.App.4th 626 (*Holberman-Kelly*). But in that case, the driver was specifically told that she was under arrest, was formally given a *Miranda* warning, and then taken to a CHP station. (*Id.* at p. 629.) Nothing of the sort happened here. Appellant was never told he was under arrest before the car he was driving was moved to the "I-80 eastbound, bus only lane" and he was moved to the same location while in the passenger seat of the CHP vehicle, then being driven by Officer Fuhrman. (SER 16.) And he was placed in handcuffs then "per CHP policy" for the obvious reason that he was an apparently inebriated passenger in a car being driven, albeit briefly, by a single CHP officer on a major public freeway. Such an action is clearly appropriate. (See, e.g., *Muehler v. Mena* (2005) 544 U.S. 93, 99; 4 Witkin et al., Cal. Criminal Law (4th ed. 2012) Illegally Obtained Evidence, § 320, pp. 1169-1170.) Indeed, nowhere in his brief to us does appellant suggest otherwise.

Thus appellant was *not* then under arrest, but only detention, and the fact that he was correctly so advised does not in any way justify his later behavior.

Appellant's final argument regarding the "confusion" allegedly created in appellant by the CHP officers was that he was given "improper/incomplete" admonitions. The core of this argument is that Officer Leavitt did not read the complete "back portion" of DMV form DS367 to appellant, and that such is established because of the officer's failure to initial certain paragraphs on the form allegedly read to appellant.

There are several problems with this argument, also. First of all, appellant never asserted any similar argument in either (1) his testimony before the DMV hearing officer, (2) his petition to the superior court, or (3) in his attorney's argument before the trial court.

Equally if not more significantly, Officer Leavitt did mark or make initials by all the paragraphs of the admonition form used under Vehicle Code sections 13353.1 and 13353 except the introductory paragraph 1 and paragraph 6. But paragraph 1 must be read in conjunction with paragraph 2, which *was* initialed or otherwise marked, and paragraph 6 is introductory to the following several bolded paragraphs, one of which was initialed and recorded that appellant refused to take any of the proffered tests because he wanted "to see a lawyer."

Finally, the last page of Officer Leavitt's report specifically recites: "At 0349 hours I read the entire Chemical Test Admonition form the back portion of the Department of Motor Vehicles (DMV) DS367." This clear statement is not, in the slightest, refuted by anything in the record, including any testimony or other evidence offered in either the administrative hearing or the trial court by appellant.

Appellant's final contention is that the DMV's decision to suspend his license was "arbitrary and capricious" because there was no "substantial evidence that [he] refused to take a chemical test." (Capitalization omitted.) This assertion is simply incorrect; there was indeed, such substantial evidence in the form of (1) Officer Leavitt's report, which explicitly so states, and (2) appellant's admission at the administrative hearing that the officer had, indeed, instructed him that he had to take a "breath or blood" test.

At that hearing, appellant never explicitly conceded that he had refused to take such a test, but he came very close to doing so a number of times. For example, he

10

testified that when Officer Leavitt had told him he had to take such a test, he responded: "I said I don't—I don't think I should be treated like this. And you—you're putting me through all this. And I—I think it's –it's not right. And I want to see a lawyer. That's what I said."

As the *Garcia* court made clear: "To comply with the law, a 'driver should clearly and unambiguously manifest the consent required by the law. Consent which is not clear and unambiguous may be deemed a refusal.' [Citation.] 'In determining whether an arrested driver's conduct amounts to a refusal to submit to a test, the court looks not to the state of mind of the arrested driver, but to "the fair meaning to be given [the driver's] response to the demand he submit to a chemical test." [Citations.]' [Citation.]" (*Garcia*, *supra*, 185 Cal.App.4th at pp. 82-83.) "A refusal to take a chemical test without the presence of a suspect's attorney is deemed an absolute refusal." (*People v. Bury* (1996) 41 Cal.App.4th 1194, 1200, fn. 3; see also *Cole v. Department of Motor Vehicles* (1983) 139 Cal.App.3d 870, 873-875; *Goodman v. Orr* (1971) 19 Cal.App.3d 845, 852-858.)

As one of our sister courts has stated: "[T]he driver should clearly and unambiguously manifest the consent required by the law. Consent which is not clear and unambiguous may be deemed a refusal. The determinative factor as to whether there is a refusal is not the arrestee's subjective state of mind, but rather the objective, fair meaning to be distilled from his words and conduct. [Citation.] A qualified or conditional consent is a refusal." (*Carrey v. Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270-1271; see also *Barrie v. Alexis* (1984) 151 Cal.App.3d 1157, 1161-1162; *Morgan v. Department of Motor Vehicles* (1983) 148 Cal.App.3d 165, 170-171; *Hasiwar v. Sillas* (1981) 118 Cal.App.3d 295, 298-299.)

Appellant cites very few legal authorities sustaining any of the arguments discussed above. One he does cite, *Rees, supra,* 8 Cal.App.3d 746, was specifically mentioned and distinguished by the trial court in its order denying appellant's petition. As that court correctly observed, in *Rees* the driver of the car was arrested, read his *Miranda* rights, but then refused to take the chemical test mandated by Vehicle Code section 13353 unless and until he could consult with an attorney. In that case, both the

11

trial court and the appellate court concluded that the defendant's "refusal to take the test was the product of confusion and a mistaken belief that he might refuse to do so until he had consulted an attorney" and that, under those circumstances, his "refusal is not the refusal contemplated by Vehicle Code section 13353 authorizing suspension of the his license to drive." (*Id.* at p. 749.) Such was simply not the fact situation here, where appellant refused to submit to any tests well before he was arrested and Mirandized. As the trial court here correctly observed, *Rees* "is limited to cases where the driver was arrested and read his Miranda rights and . . . focuses on the responsibility of the officer . . . to clarify the confusion he caused by Mirandizing the driver." Such was not the case here, where appellant was failing his field sobriety tests, demanding a lawyer, arguing with the officers, and refusing to exit his car all before he was arrested and Mirandized.

The only other pertinent case cited by appellant is, as noted above, *Holberman-Kelly.* Appellant cites this case in support of his argument that "[s]ince the officer(s) caused Appellant to be confused about whether [he] was under arrest (officer induced confusion), Appellant's suspension should be set aside." Once again, that case concerned the interactions between the driver of a car and the CHP officer who had arrested her for drunken driving, read her her *Miranda* rights, and then taken her to a CHP station where, despite her repeated requests, did not allow her to call an attorney nor, apparently, heard or acknowledged her agreement to submit to a blood test (*Holberman-Kelly, supra,* 213 Cal.App.4th at pp. 629-630.) Based on these facts, the Marin County Superior Court granted Holberman-Kelly's petition for a writ of mandate, and Division Three of this court affirmed that holding, noting that there was substantial evidence supporting the trial court's finding that Holberman-Kelly never refused to submit to a blood test. (*Id.* at pp. 631, 633.) In no way, does *Holberman-Kelly* impact this case; it involved post-arrest interactions between the arrestee and the CHP officer and clearly substantial evidence that there had been no post-arrest refusal to submit to a blood test.

In view of the clearly controlling law, the record made by Officer Leavitt, and appellant's ambiguous and often contradictory testimony at the administrative hearing,

the trial court was clearly correct in its decision upholding the DMV's suspension of appellant's driver's license.

## IV. DISPOSITION

The judgment of the Superior Court denying appellant's petition for a writ of mandate is affirmed.

_____
Haerle, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.




A136563, *Teran v. Valverde*

14