[No. A135763. First Dist., Div. Three. Feb. 5, 2013.]

ZOE HEI RIM HOBERMAN-KELLY, Plaintiff and Respondent, v. GEORGE VALVERDE, as Director, etc., Defendant and Appellant.

## COUNSEL

Kamala D. Harris, Attorney General, Alicia M. B. Fowler, Assistant Attorney General, Miguel A. Neri, Fiel D. Tigno and Lillian Y. Tabe, Deputy Attorneys General, for Defendant and Appellant.

Kapsack & Bair, Bruce Kapsack and Hudson Bair for Plaintiff and Respondent.

## OPINION

**POLLAK, Acting P. J.**—George Valverde, the Director of the Department of Motor Vehicles (the department), appeals from the issuance of a writ of mandate setting aside the suspension of the driver's license of Zoe Hei Rim Hoberman-Kelly for allegedly refusing to submit to a blood test to determine her blood-alcohol content. The interaction between Hoberman-Kelly and the officer who advised her of the obligation to submit to the test is recorded on a video that is part of the administrative record. After reviewing the video we have no doubt that substantial evidence supports the trial court's finding that the officer's reading of the necessary admonitions to Hoberman-Kelly was mechanical, with no attempt having been made to dispel her confusion as to the right to contact counsel, and that, in all events, Hoberman-Kelly "state[d] repeatedly that she would submit to a blood test." We shall affirm the trial court's order.

### Background

Hoberman-Kelly was arrested in the early morning hours on July 30, 2010. California Highway Patrol Officer M. Perry and his partner responded to a call of a vehicle traveling westbound in the eastbound lanes on Sir Francis Drake Boulevard in Marin County. The officers found the car stopped facing

westbound in the eastbound lanes, detected an odor of alcohol on Hoberman-Kelly's breath, noticed her bloodshot watery eyes, slurred speech and unsteady gait, and observed her poor performance on a series of field sobriety tests. After Perry read the preliminary alcohol screen admonition to Hoberman-Kelly, she refused to take a breath test at the scene and was arrested for driving under the influence of alcohol. While in the patrol car she was read her *Miranda*[1] rights and advised of the consequences under Vehicle Code section 13353 of failing to submit to a chemical test of her blood-alcohol content. She was taken to the Marin Area California Highway Patrol office, where a certified phlebotomist was waiting to administer a blood test and where Perry read her the chemical test admonition verbatim as it is printed on Department of Motor Vehicles form DS 367.

The exchange between Officer Perry and Hoberman-Kelly is difficult to describe accurately but fortunately is captured in full on a video that is included in the administrative record. Hoberman-Kelly, who was read her *Miranda* rights in the officer's vehicle, observed a sign on the wall next to which she was handcuffed advising her of the right to make a telephone call and she stated that she wanted to call her attorney and to make the telephone call to which the sign said she was entitled. Hoberman-Kelly was belligerent and at one point managed to free herself from the handcuff, but she was coherent and made plain that she did not understand why she could not make the phone call to which the sign referred. Perry at no point acknowledged her request to make a call, responded to her question why she could not do so as the sign indicated, or made any effort to explain that despite her right to speak to an attorney she was not entitled to do so or to make her call before submitting to the test. Instead the officer, ignoring Hoberman-Kelly's requests, continued disjointedly to read the printed admonition. The admonition does include the statement that "You do not have the right to talk to an attorney or have an attorney present before stating whether you will submit to a test, before deciding which test to take, or during the test." However, from the video it is apparent that Hoberman-Kelly, who was voicing her demands while Perry was reading the statement, did not hear the admonition and that Perry must have been aware that she did not hear it. Hoberman-Kelly repeatedly stated that she wanted to read the admonition and at one point attempted to grab the document, but the officer refused to permit her to see it. While Perry was reading, Hoberman-Kelly, although repeating her demand to speak with an attorney, stated several times that she had no problem with taking a blood test, but Perry appeared to be paying no attention to her. When Perry finished reading the admonition, he asked Hoberman-Kelly whether she would submit to a blood test, to which she responded "all right," but Perry stated "that's a no" and that he would take it as a refusal. Hoberman-Kelly immediately shouted in response that she would "give you a free fucking

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602].

blood test" and repeated that she would do so several times. The phlebotomist then promptly administered the blood test without incident.

After an administrative hearing, the department suspended Hoberman-Kelly's privilege to drive for one year for refusing the request to submit to the blood-alcohol test. The hearing officer found that Hoberman-Kelly "refused to take a chemical test and kept insisting she wanted her attorney present. Officer Perry advised her he considered it a refusal and she then stated she would take a blood test. [Hoberman-Kelly's] opportunity to change her mind to retract her refusal to complete a chemical test had expired because the officer already notified her he considered her responses and actions as a refusal."

Hoberman-Kelly filed a petition for a writ of mandate in the superior court seeking to vacate the suspension order. Following a hearing at which the court reviewed the entire administrative record, including the video, the court granted the writ and entered an extensive order reading in part as follows: "The 'fair meaning' given to Ms. Hoberman-Kelly's statements is that she is genuinely exasperated and confused by the conflict between her right to counsel as indicated on the wall of the police station and Officer Perry's implicit and explicit refusal to permit her to call for an attorney. Officer Perry responds by reading the admonition mechanically and makes no effort to explain that the *Miranda* right does not apply to the chemical tests. Officer Perry also refuse[d] Ms. Hoberman-Kelly's requests that she be permitted to read the admonition herself. The court notes the contrast with *McGue v. Sillas* (1978) 82 Cal.App.3d 799, 808 [147 Cal.Rptr. 354], where 'two officers explained the implied consent admonition in their own words, and allowed appellant to read it for himself.' [¶] The video with Officer Perry also shows that Ms. Hoberman-Kelly states repeatedly that she would submit to a blood test. Officer Perry does not acknowledge or accept these offers and instead read the admonition to its conclusion and then states that he will record her as a refusal. Although delivered in an agitated voice, Ms. Hoberman-Kelly does state 'I have no problem with a blood test' while Officer Perry reads the admonition and 'I will give you a free fucking blood test' seconds after he says that he deems [the] request for an attorney as a refusal. [¶] The video takes 2:59 minutes, and there is no indication in the record that Ms. Hoberman-Kelly's insistence on an attorney delayed the drawing of her blood. The video of the blood draw shows that Ms. Hoberman-Kelly submitted to a blood draw. [¶] The court condemns Ms. Hoberman-Kelly's belligerence and is sympathetic to the challenges of law enforcement in dealing with agitated members of the public. The court nevertheless finds that Ms. Hoberman-Kelly was confused by [the] discrepancy between the information on the wall and the information provided to her by Officer Perry, and that Officer Perry failed to make any reasonable effort [to] clarify and explain the difference. The court will not find that a mechanical reading of the

admonition is sufficient as a matter of law to eliminate confusion where a citizen has asked why the *Miranda* rights do not apply to the chemical tests."

The department has timely appealed from the superior court's order.

## Discussion

"In ruling on an application for a writ of mandate following an order of suspension . . . [of a driver's license], a trial court is required to determine, based on its independent judgment, ' "whether the weight of the evidence supported the administrative decision." ' " (*Lake v. Reed* (1997) 16 Cal.4th 448, 456 [65 Cal.Rptr.2d 860, 940 P.2d 311].) On appeal, this court determines only whether the trial court's findings are supported by substantial evidence. (*Id.* at p. 457; see, e.g., *Carrey v. Department of Motor Vehicles* (1986) 183 Cal.App.3d 1265, 1270 [228 Cal.Rptr. 705].) " ' "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings." ' " (*Lake v. Reed, supra,* at p. 457.)

The department suggests that the facts here are undisputed because they are recorded on a video, so that the issue on appeal is a question of law as to which this court should make an independent determination. However, the existence of a video recording of the events in question does not convert questions of fact into questions of law. This appeal turns on whether there is substantial evidence to support the trial court's factual finding that Hoberman-Kelly did not refuse to submit to a blood test. Were we to answer this question in the negative—which we do not—the outcome would then depend on whether there was substantial evidence to support the trial court's implicit finding that any refusal resulted from Hoberman-Kelly's confusion induced by Perry as to her right to counsel before submitting to the test. (See *McGue v. Sillas, supra,* 82 Cal.App.3d at p. 807.) In all events, the issues are factual and we review the record to determine whether the trial court's findings are supported by substantial evidence.

█ The Vehicle Code[2] provides that chemical testing incidental to a lawful arrest shall be "administered at the direction of a peace officer having reasonable cause to believe the person was driving a motor vehicle in

---

[2] All statutory references are to the Vehicle Code unless otherwise indicated.

violation of Section 23140, 23152, or 23153." (§ 23612, subd. (a)(1)(C).) "The person shall be told that his or her failure to submit to . . . the required chemical testing will result in . . . the suspension of the person's privilege to operate a motor vehicle for a period of one year . . . ." (§ 23612, subd. (a)(1)(D).) "The officer shall also advise the person that he or she does not have the right to have an attorney present before stating whether he or she will submit to a test or tests, before deciding which test or tests to take, or during administration of the test or tests chosen, and that, in the event of refusal to submit to a test or tests, the refusal may be used against him or her in a court of law." (§ 23612, subd. (a)(4).) Section 13353, subdivision (a) provides in part that "[i]f a person refuses the officer's request to submit to . . . a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to . . . the test or tests after being requested by the officer, the department shall do one of the following: [¶] (1) Suspend the person's privilege to operate a motor vehicle for a period of one year. . . ."

■ "California courts have excused refusals to take a chemical test on the ground of officer-induced confusion resulting from the juxtaposition of the [implied consent warning and the *Miranda* warning] and the officer's failure to clarify and explain the difference." (*McGue v. Sillas, supra*, 82 Cal.App.3d at p. 806.) "It is recognized that juxtaposition of the implied consent warnings (no right to refuse a test and no right to consult with or to have an attorney present during its administration) with the *Miranda* admonition (right to refuse interrogation and to have an attorney present at all stages of a police interrogation, etc.), is apt to induce confusion. If a driver who has been given *Miranda* insists on the presence of an attorney before choosing a test the courts have recognized that he may have been confused by the two warnings and the officer's failure to clarify and explain the difference. In such a case the refusal to take a test has been held not to be a refusal within the meaning of said section 13353. [Citation.] The question of officer-induced confusion is one of fact. [Citations.] When a driver who has been given *Miranda* manifests confusion by asserting his alleged right to an attorney, it is incumbent upon the officer to explain that the right does not apply to these tests." (*McDonnell v. Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 658 [119 Cal.Rptr. 804].)

It is questionable whether officer-induced confusion would provide a defense here if Hoberman-Kelly had refused to take a blood test. On the one hand, if the person manifests confusion, " 'it is incumbent upon the arresting

officer to elaborate upon the warning. The arrested person should be explicitly informed that the constitutional rights previously explained to him are not applicable to the decision he must make concerning the three chemical tests, and that he has no right to consult an attorney before making the decision that he will, or will not, submit to one of them.' " (*Goodman v. Orr* (1971) 19 Cal.App.3d 845, 855 [97 Cal.Rptr. 226].) On the other hand, " 'The rule only requires that the officer erase possible confusion caused the allegedly drunken laymen by the officer's own statements.' " (*Ibid.*) Here there is no evidence that Perry made any statements to Hoberman-Kelly that were incorrect or misleading. Nonetheless, it was unmistakably apparent that she was confused by the *Miranda* warning she had received coupled with the sign on the wall advising that she had a right to make a telephone call. While Perry did read the sentence in the form admonition that she had no right to an attorney before deciding whether to take the test or during the test, he did so in what the trial court aptly described as a "mechanical" reading, and what might also be described as purely perfunctory. It is clear from the video that Perry made no genuine effort to communicate to Hoberman-Kelly "that the constitutional rights previously explained to [her] are not applicable to the decision [she] must make." (*Ibid.*) Although Hoberman-Kelly repeatedly asked Perry why she could not make a phone call as the sign indicated she could, Perry made no effort to answer her or to explain that she was not entitled to make the call until after she took the blood test.

Despite the officer's indifference to Hoberman-Kelly's pleas for an explanation, Hoberman-Kelly repeatedly told the officer she would take the blood test, both before and after Perry stated he would take her responses as a refusal. When he made that pronouncement she immediately responded again with the colorful but explicit statement that she would give him the blood test. There unquestionably is substantial evidence that Hoberman-Kelly never refused to submit to a blood test, and certainly never did so after receiving the statutory admonition. Without causing any delay, she in fact cooperatively submitted to the drawing of her blood as she said she would.

■ Like the trial court, we are mindful of the difficulties an officer confronts in performing his duties while dealing with an apparently intoxicated individual who is being loud and unruly. Nonetheless, the officer is obligated to attempt to clarify an arrested person's confusion over when the right to counsel arises and Perry made no meaningful attempt to do so. We agree with the trial court that Perry both "failed to make any reasonable effort" to dispel Hoberman-Kelly's confusion and ignored her repeated statements that she would submit to a blood test. The writ of mandate was properly issued.

## Disposition

The judgment is affirmed.

Siggins, J., and Jenkins, J., concurred.