Filed 12/1/20  Singh v. Gordon CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SIMERJEET SINGH, | |
| Plaintiff and Appellant, | G058278 |
| v. | (Super. Ct. No. 30-2019-01058049) |
| STEVE GORDON, as Director, etc., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

Rodney Gould for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Chris A. Knudsen, Assistant Attorney General, Gary S. Balekjian and Catherine E. Wise Deputy Attorneys General, for Defendant and Respondent.

\*          \*          \*

Plaintiff Simerjeet Singh had his driver's license suspended after being arrested for driving under the influence (DUI) and refusing to consent to a chemical test. Under Vehicle Code section 13353, revocation of his license was automatic upon refusal. After the Department of Motor Vehicles (DMV) upheld the license suspension at an administrative hearing, Singh petitioned the trial court for a writ of mandate, arguing the police officer's recitation of his *Miranda* rights confused him about his obligation to consent to a chemical test, which nullified his refusal.[1] The trial court denied the petition. Singh appeals, contending substantial evidence does not support the court's conclusion.

We affirm. The evidence supports a conclusion that police officers clearly explained Singh's rights and obligations. Singh simply did not believe them. As an employee at the Orange County District Attorney's Office, he knew just enough about the law to be dangerous, believing that he could insist on a search warrant before agreeing to a chemical test. He was wrong. His license was properly revoked.

STATEMENT OF FACTS

At approximately 9:40 p.m., on February 2, 2018, Singh was driving his vehicle on El Camino Real Boulevard in the City of Tustin, when he ran his car into a pillar, then proceeded to strike a parked car. A witness saw Singh exit his vehicle and stumble into the restroom of a nearby restaurant. The witness followed Singh and observed him vomiting on the ground.

Afterward, Singh was transported by ambulance to a local hospital. Officer Swart of the Tustin Police Department followed Singh to the hospital, where he observed Singh to have bloodshot, watery eyes, a strong smell of alcohol, and slurred speech. At the hospital, Singh was uncooperative and, in the administrative hearing officer's words,

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

"obstreperous[,] avoiding even the physician's questions regarding what had happened, and the driver's own health."

At the hospital, Officer Swart asked Singh if he would be willing to take a blood-alcohol test, either by breath or blood draw. Singh refused, stating he would only take one if Officer Swart obtained a warrant. Officer Swart explained that Singh had agreed to take a chemical test when he obtained his California Driver's License and that refusal to take a test could result in his license being automatically suspended, but Singh did not budge. After Singh was discharged, at approximately 11:15 p.m., Officer Swart arrested him for DUI and transported him to the Tustin Police Department. Officer Swart read Singh his *Miranda* rights at the station.

After the *Miranda* rights were read, Officer Swart turned on his body camera to record the remainder of the interview. At that point, another officer, Officer Dao, who was in charge of drafting the report on the traffic collision, approached Singh to ascertain what happened. After confirming with Officer Swart that he had read Singh his *Miranda* rights, Officer Dao began questioning Singh, but Singh exercised his right to remain silent, stating, "If I have my Miranda rights, I'd like to use them."

Shortly afterward, Officer Swart explained to Singh that because he refused to consent to a breath or blood test, Officer Swart was filling out an application for a search warrant. This was apparently Officer Swart's first time performing a DUI arrest, so he brought in another officer, Officer Babb, to help.

Officer Babb began by stating to Singh, "When we have to do a search warrant, and you basically refuse to provide a sample of your blood or your breath, your license automatically gets suspended for a year." Singh replied, "I'm not refusing, I'm just saying, you know, hey, give me a warrant, and I'll totally comply." Officer Babb reiterated that if he does not willingly provide a sample, his license would automatically be suspended, and, to emphasize the point, Officer Swart chimed in, "me . . . filling out this search warrant for your blood, that's going to take away your license." Officer Babb

drove the point home: "and there is nothing you can do about that." Officer Swart went on, "You're under the impression we need a search warrant, but you waived that right when you signed for your California Driver's License." Singh, unpersuaded, asked, "Can I see that? Can I look that up?" "If you show me that, hey, go ahead, take my breathalyzer right now." Officer Swart replied that right now he is filling out the application for the warrant, and if he does that, "your license *is going to get taken away*." (Italics represent the emphasis in Officer Swart's voice.) Singh replied, "I understand that. But . . . you show me that rule, I'll go for it right now. Because I know, legally, you're allowed to lie to me."

While Officer Swart continued filling out the search warrant application, Officer Babb, to his credit, found the relevant statute and showed it to Singh. He read Vehicle Code section 13353, which states, "(a) If a person refuses the officer's request to submit to, or fails to complete, a chemical test or tests pursuant to Section 23612, upon receipt of the officer's sworn statement that the officer had reasonable cause to believe the person had been driving a motor vehicle in violation of Section 23140, 23152, or 23153, and that the person had refused to submit to, or did not complete, the test or tests after being requested by the officer, the department shall do one of the following: (1) Suspend the person's privilege to operate a motor vehicle for a period of one year." The other options involve either a two- or three-year suspension under certain circumstances.

Singh's bluff was called. He did not submit to a test, as promised, but instead replied, "I have not received any sworn statement." That response was a misinterpretation of Vehicle Code section 13353—the sworn statement goes to the DMV, not the driver. Singh went on, "I'm not trying to be a hard ass . . . . I'm just saying, hey, I have some rights, I'm going to use them."

Afterward, now at about 25 minutes into the questioning, the officers read a standard admonition concerning Singh's obligation to submit to a breath or blood test. Midway through the admonition, Singh interjected, "I would like an attorney present,

4

sir." The admonition continued, eventually reaching the following statement, "You do not have the right to talk to an attorney or have an attorney present before stating whether you will submit to a test or before deciding which test to take or during the test." The admonition concluded with the following questions: "Will you take a breath test?" Singh replied, "not at this point, sir, I would like an attorney present." "Will you take a blood test?" Singh replied, "Not at this point sir, if I don't have to. Unless you have a search warrant, I will happily take that."

Officer Swart continued filling out the application for a search warrant. When Singh was told that Officer Swart would need to speak with the Orange County District Attorney's Office, he informed the officers that he works there. One of the officers asked, "Are you an attorney?" Singh replied, "I'm trying to be, I work at the DA's office. That's exactly where I came from."

A warrant was eventually obtained and Singh's blood was drawn, but the process took a while—the accident occurred at approximately 9:40 p.m.; the blood draw occurred at 2:39 a.m. the next morning. Even still, Singh's blood alcohol content was .089 percent.

At around the same time, Officer Swart served Singh with an administrative per se order of suspension/revocation of driving privileges. He filed a sworn statement with the DMV as required by Vehicle Code section 13353. Singh requested an administrative hearing, which was granted.

After the administrative hearing, where Singh testified, the hearing officer determined there was reasonable cause to believe Singh was driving under the influence, he was lawfully arrested, he was informed that his license would be revoked if he refused testing, and he refused testing anyway. The hearing officer rejected Singh's argument that the *Miranda* warnings led Singh to be confused about his rights.

Singh then filed a petition for a writ of mandate in the trial court. The court denied the petition without elaboration. Singh timely appealed.

DISCUSSION

On appeal, Singh renews his contention that the police officers confused him about his obligation to provide a chemical test by first reading him his *Miranda* rights. While it is certainly true that the reading of *Miranda* rights can confuse a driver and thereby avoid the consequences of refusing to take a chemical test (*McDonnell v. Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 658), the snag for Singh is that whether he was confused by the *Miranda* warnings is a factual question. We review factual questions for substantial evidence. (*Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 82.) That means Singh could only win on appeal if the evidence *compelled* the conclusion that he was confused by the *Miranda* warnings. The evidence here does not so compel.

A plausible interpretation of the evidence is that Singh misunderstood his rights based on his own independent beliefs about the law and refused to believe anything the police told him. This interpretation is supported by the fact that he worked at the Orange County District Attorney's Office, as well as the self-assured way in which he asserted his rights. Moreover, his continued insistence that the police obtain a warrant is not likely to have come from a *Miranda* warning, which does not typically mention anything about warrants. Finally, Singh explicitly said the police could lie to him, and it was clear he simply did not believe anything they were going to tell him.

Singh's position is that anytime *Miranda* warnings have been given, it is not enough to explain to a driver that he faces confiscation of his license if he refuses a test, and that he does not have a right to an attorney at that stage. The officer must take the additional step of explicitly saying that *Miranda* rights do not apply. But given Singh's refusal to believe anything the police officers told him, what difference would that have made? There is nothing magical about the word "*Miranda*." If Singh did not

believe the police when they told him what his actual rights consisted of, couching those rights in terms of *Miranda* would not have changed anything.

Throughout these proceedings, Singh has relied heavily on *Hoberman-Kelly v. Valverde* (2013) 213 Cal.App.4th 626 (*Hoberman-Kelly*), a case which, in our view, only serves to highlight the shortcomings in Singh's argument. There, a driver was arrested for DUI and, seeing a sign at the police station advising her of her right to a phone call, insisted on calling her attorney. (*Id.* at p. 629.) The officer "at no point acknowledged her request to make a call, responded to her question why she could not do so as the sign indicated, or made any effort to explain that despite her right to speak to an attorney she was not entitled to do so or to make her call before submitting to the test." (*Ibid.*) The officer proceeded to read the driver the standard testing admonition, including that she was not entitled to an attorney. "However, from the video it is apparent that [the driver], who was voicing her demands while [the officer] was reading the statement, did not hear the admonition and that [the officer] must have been aware that she did not hear it." (*Ibid.*) "When [the officer] finished reading the admonition, he asked [the driver] whether she would submit to a blood test, to which she responded 'all right,' but [the officer] stated 'that's a no' and that he would take it as a refusal." (*Ibid.*) The DMV suspended her license.

The driver petitioned for a writ of mandate, which the trial court *granted*. (*Hoberman-Kelly*, *supra*, 213 Cal.App.4th at p. 630.) *The DMV* appealed. (*Id.* at p. 631.) Notwithstanding the evidence above, the court commented, "It is questionable whether officer-induced confusion would provide a defense here if [the driver] had refused to take a blood test." (*Id.* at p. 632.) That point was immaterial, however, because the court found substantial evidence supported the trial court's conclusion that the driver never actually refused a test. (*Id.* at p. 633.)

The differences between *Hoberman-Kelly* and our case are readily apparent. Here, Singh did, in fact, refuse to take a blood or breath test. Singh clearly

7

heard and understood the admonition that he was not entitled to an attorney before taking a test.  The officers made a substantial effort to explain Singh's rights, including taking the unusual step of looking up the relevant statute and reading it to Singh.  Lastly, and most importantly, the standard of review here is flipped:  In *Hoberman-Kelly* the court resolved all conflicts and inferences in favor of the driver; here we must resolve the same in favor of the DMV.  *Hoberman-Kelly* is inapposite.

Ultimately, the question here is simply whether the evidence supports the trial court's conclusion that Singh's refusal was not a product of officer-induced confusion.  It does.

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs incurred on appeal.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

GOETHALS, J.

8