Filed 4/2/24  Carroll v. Gordon CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DONALD CARROLL, | C098182 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0048874) |
| v. | |
| STEVE GORDON, as Director, etc., | |
| Defendant and Respondent. | |

Following his arrest for driving under the influence of alcohol (DUI), plaintiff Donald Carroll was advised that refusing to submit to a chemical test would result in the Department of Motor Vehicles (DMV) suspending his driver's license under California's implied consent law.  (Veh. Code, § 23612.)[1]  Nevertheless, plaintiff refused to consent to a chemical test, and the DMV suspended his license.  Plaintiff requested a hearing, and he

_____

[1]  Further undesignated statutory references are to the Vehicle Code.

1

argued in part that his refusal to consent to a chemical test was caused by the arresting officer's incomplete or contradictory admonishments. The hearing officer rejected that argument and found that plaintiff was adequately admonished of the consequences of his refusal. Plaintiff filed a petition for writ of mandate in the superior court, which the court denied. He appeals from the superior court's decision. We will affirm.

## FACTS AND PROCEEDINGS

*Plaintiff's Accident and Arrest*

On January 25, 2022, at approximately 6:24 p.m., plaintiff crashed his truck into an irrigation ditch on a remote road. A California Highway Patrol (CHP) officer arrived at the scene and began helping plaintiff out of the truck; Officer Moser arrived as plaintiff was getting out of the truck. Upon getting out of the truck, plaintiff nearly fell on his face and had to be held up by the officers. Plaintiff leaned on the fender of Moser's patrol car to keep from falling and had difficulty finding his driver's license. Plaintiff stated that he answered a phone call while driving and "ended up in the ditch."

Moser smelled the strong odor of alcohol coming from plaintiff's breath and person and noticed that plaintiff had red and watery eyes and that his speech was slurred. Plaintiff acknowledged that he had consumed three mixed drinks "over the entire day." Moser thought plaintiff may "have some alcohol on board" and asked whether plaintiff wished to perform field sobriety tests. Plaintiff asked for clarification as to what Moser meant by "on board," and Moser responded, "Yeah, on you, in your system." Plaintiff said, "No, I, I don't." Moser replied, "Okay. You don't have to do any test. That's perfectly your, your right." Moser arrested plaintiff based on his opinion that plaintiff had been driving his truck while under the influence of alcohol.

*Admonition Related to Chemical Test*

After being placed in the back of Moser's patrol car, plaintiff asked, "Where am I headed?" Moser responded that he would "explain your options here in just a second." Moser then explained: "Okay. So you've been arrested for driving under the influence.

2

You're required by state law to submit to a chemical test. You can take a blood test, you can take a . . . breath test, or you can refuse to take a test. If you refuse, I will get a search warrant and we will get your blood." Moser asked plaintiff, "So, of those three, which do you want to do?" Plaintiff asked Moser to repeat his options, which Moser did. Moser again asked plaintiff which option he would choose, and plaintiff responded, "I'll refuse." Moser indicated that he intended to obtain a search warrant and would "get [his] blood anyway."

On the way to the CHP station, Moser informed plaintiff that once they arrived at the station, he was going to "read [plaintiff] . . . something that, uh, basically explains the consequences of refusing to complete a chemical test." Moser again explained that if plaintiff refused to complete the test, he would get a warrant to draw plaintiff's blood. Plaintiff asked what would happen next, and Moser responded: "I'll read you some information on the consequences of refusing a chemical test and then you'll make a decision on whether or not you want to complete a test." He added, "And if you say yes, we'll do that test. If you say no, I'll write a search warrant for your blood, and then uh, after that, we'll go to the hospital."

After arriving at the CHP station, Moser again asked plaintiff if he wanted to take a blood or a breath test; plaintiff responded, "I can't believe this," and "They got fucking people making shit up . . . and everything else, and here I am."

Moser then read plaintiff the "Chemical Test Admonition," which was written on the back of DMV form DS367: "Don, let . . . me read this to you 'cause it's kind of important. Today is January 25, 2022. It is 7:02 PM. You are required by state law to submit to and complete a . . . chemical test to determine the alcohol content of your blood. Because I believe you are under the influence of alcohol, you have the choice of taking a breath or blood test. If you refuse to submit to- [¶] . . . [¶] . . . or fail to complete a chemical test, your driving privilege will be administratively suspended for one year or revoked for two or three years by the Department of Motor Vehicles."

3

Plaintiff asked Moser to "say that again." Moser repeated: "If you refuse to submit to or fail to complete a chemical test, your driving privilege will be administratively suspended for one year or administratively revoked for two or three years by the Department of Motor Vehicles. That is just from the DMV. That has nothing to do with the courts. That's just the DMV can do that on their own." Plaintiff replied, "Oh."

Moser then informed plaintiff that his refusal or failure to complete a chemical test may be used against him in court, refusal or failure to complete the blood or breath test would result in a fine and mandatory imprisonment if he were convicted of driving under the influence of alcohol (§ 23152), and plaintiff did not have the right to consult an attorney before deciding whether he would submit to a test or which test he would take, or during the test. Moser added that if plaintiff could not complete the test he chose, he was required to submit to and complete the other test.

Plaintiff indicated that he did not understand "everything you stated." Moser clarified: "Right. It basically said . . . if you don't complete a test, the DMV will suspend your license for between one to three years." Plaintiff responded: "Oh yeah, I mean, I can't live with that."

Moser then asked whether plaintiff "would . . . like a blood test?" Plaintiff responded, "A blood test?" Moser again explained: "If you don't complete the test or you say you're not going to, which is right there where we're at now, I'm going to write a search warrant." He then asked again "will you complete a breath . . . a blood test?" Plaintiff responded, "I don't know if I should. My god, I got to stuff [*sic*] in my head so fast. Live and learn." Moser replied, "Okay, I'm gonna write the warrant and you can just . . . ." Plaintiff stated, "Yep. One more warrant, right." Plaintiff did not consent to a test.

After further discussion, plaintiff stated, "I've never been through this thing . . . ." An unidentified speaker responded: "Okay, well, we gave you the opportunity to

4

complete the breath test or blood test and you decline[d]. And so I've written a search warrant, the judge will sign it and then the phlebotomist here will take your blood." Plaintiff responded, "Okay." Approximately two minutes later, an unidentified speaker said: "Right now you can still say you want to complete a breath test or just have them take your blood without a search warrant." Plaintiff responded, "Okay." He was then told, "[t]he search warrant will be here in a couple of minutes." The search warrant was issued, and plaintiff's blood was drawn.

*Administrative Hearing*

The DMV suspended plaintiff's driver's license for DUI. Plaintiff requested a hearing, which was held on July 20, 2022. At the hearing, plaintiff argued in part that he was confused because Moser told him that he could refuse to consent to a chemical test of his blood alcohol content, and that Moser would simply obtain a search warrant if plaintiff refused.

The hearing officer rejected plaintiff's argument regarding officer-induced confusion. He recognized that Moser initially failed to inform plaintiff of the consequences of refusing to consent to a chemical test. However, on the way to the CHP station, Moser told plaintiff he would read something to plaintiff at the station that would explain the consequences for refusing to complete the test, and only then would plaintiff decide whether to consent. At the station, Moser informed plaintiff that he was going to be telling plaintiff something important, and read verbatim the admonishment on the back of the DS367 form. Moser repeated the admonition when asked to do so by plaintiff, and he then summarized the admonition when plaintiff indicated he did not understand. Although plaintiff responded, "oh, I mean, I can't live with that," he still did not choose a test, and a warrant was obtained.

The hearing officer determined that while Moser initially failed to inform plaintiff of the consequences of refusing to consent to a breath or blood test, he advised plaintiff on the way to the CHP station that he would inform plaintiff of the consequences of

5

refusal once they arrived at the station, at which time plaintiff could decide whether to consent, and plaintiff was properly admonished at the station. Finally, when plaintiff indicated that he was still confused, "[Moser] told him in simple words that his license would be suspended for one to three years." The hearing officer re-imposed the suspension of plaintiff's driver's license.

*Plaintiff's Petition for Writ of Mandate*

Plaintiff filed a petition for writ of mandate in the superior court. (Code Civ. Proc., § 1094.5.) After briefing and a hearing, the trial court rejected plaintiff's argument regarding officer-induced confusion and adopted its tentative ruling denying the petition. The court found: "[Plaintiff] seeks to set aside and revoke the DMV's order suspending his driving privileges, asserting CHP Officer Moser failed to effectively communicate to [plaintiff] the consequences of failing to submit to chemical testing. The DMV had the burden of proving the facts necessary at hearing to support [plaintiff's] suspension. (*Daniels v. Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536.) The administrative record here demonstrates substantial competent evidence to support that [plaintiff] failed to submit to a chemical test, subjecting him to suspension of his driving privileges. (*Espinoza v. Shiomoto* (2017) 10 Cal.App.5th 85, 98; [Veh.] Code[, §§] 13353[, subd.] (c), 23612[, subds.] (e), (f).) The administrative record here supports the suspension of [plaintiff's] driving privileges. Thusly, the petition is denied."

Plaintiff timely appealed. The case was fully briefed on January 26, 2024, and was assigned to this panel at the end of that month.

## DISCUSSION

Plaintiff contends insufficient evidence supports the trial court's ruling because the evidence showed his failure to consent to a chemical test was due to officer-induced confusion. We disagree.

6

A.  *Standard of Review*

"In ruling on a petition for writ of mandate following a DMV suspension order, the 'trial court is required to determine, based on its independent judgment, " 'whether the weight of the evidence supported the administrative decision.' " [Citation.]' [Citations.]  'In making that determination, the trial court had to "weigh the evidence and make its own determination as to whether the administrative findings [were] sustained." [Citation.]' [Citation.]  'In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.' [Citation.]  'The review shall be on the record of the [administrative] hearing and the court shall not consider other evidence.' [Citation.]  [¶]  On appellate review, this court reviews ' "the record to determine whether the trial court's findings are supported by substantial evidence." ' [Citations.]  Issues of law are reviewed de novo." (*Garcia v. Department of Motor Vehicles* (2010) 185 Cal.App.4th 73, 81-82 (*Garcia*).)

Under the substantial evidence standard, we will "resolve all conflicts in favor of the DMV, as the party prevailing in the superior court, and give it the benefit of all reasonable inferences in support of the judgment." (*Hildebrand v. Department of Motor Vehicles* (2007) 152 Cal.App.4th 1562, 1568.)  " ' " 'We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings.' " ' " (*Ibid.*)

B.  *Legal Background*

Under California's implied consent law, "[a] person who drives a motor vehicle is deemed to have given his or her consent to chemical testing of his or her blood or breath for the purpose of determining the alcoholic content of his or her blood, if lawfully arrested for" DUI.  (§ 23612, subd. (a)(1)(A).)  Such testing is incidental to a lawful arrest for DUI and is done at the direction of a law enforcement officer having reasonable

7

cause to believe the person drove under the influence of alcohol in violation of section 23152. (§ 23612, subd. (a)(1)(C).) Refusing an officer's request to submit to, or failure to complete, a chemical test pursuant to section 23612 requires the DMV to either (1) suspend the person's driver's license for one year, or (2) revoke the person's driver's license for two or three years, depending on the circumstances. (§ 13353.)

A driver must be informed that their failure to submit to, or the failure to complete, the required chemical testing will result in a mandatory suspension or revocation of their driving privilege if they are convicted of driving under the influence. (§ 23612, subd. (a)(1)(D); *Hoberman-Kelly v. Valverde* (2013) 213 Cal.App.4th 626, 632.)

A driver's refusal to consent to a chemical test is excused when there is officer-induced confusion, a question of fact. (*McDonnell v. Department of Motor Vehicles* (1975) 45 Cal.App.3d 653, 658.) " '[I]f the evidence shows the officer made ambiguous or conflicting statements, that evidence has a bearing on whether . . . the response of the driver indicated his confusion rather than his refusal to perform a statutory duty.' " (*Goodman v. Orr* (1971) 19 Cal.App.3d 845, 853.) A sufficient advisement "must convey to the driver the 'strong likelihood' that the adverse result would follow upon refusal." (*Thompson v. Department of Motor Vehicles* (1980) 107 Cal.App.3d 354, 360.) It is the officer's burden to adequately advise the driver in a manner comprehensible to the driver. (*Id.* at p. 363.) But an officer is not required to "persist[ed] in his attempt to admonish" the driver until the driver is ready to listen. (*Morphew v. Department of Motor Vehicles* (1982) 137 Cal.App.3d 738, 743.) Additionally, being too intoxicated to understand the admonishments does not constitute officer-induced confusion. (*Smith v. Department of Motor Vehicles* (1969) 1 Cal.App.3d 499, 505.) Ultimately, "[i]n determining whether an arrestee's refusal is the result of confusion, the crucial factor is not the state of the arrestee's mind; it is the fair meaning to be given his response to the demand that he submit to the chemical test." (*Cahall v. Department of Motor Vehicles* (1971) 16 Cal.App.3d 491, 497.)

C. *Analysis*

Plaintiff argues that his failure to submit to the required testing was induced by Moser's incomplete or inconsistent admonishments. Specifically, he argues that Moser initially informed him that the only consequence of refusing a chemical test would be that Moser would secure a search warrant, and Moser did not communicate the statutory warning until after he was already under the mistaken belief that he had the right to refuse all chemical tests without consequence (other than a search warrant being obtained). He claims that a "fair reading" of the communication between him and Moser reveals that his refusal was based on Moser's initial admonishment that refusal was a legitimate option.

Resolving all conflicts in favor of the DMV, as we must, and giving the DMV the benefit of all reasonable inferences in support of the judgment (*Hildebrand v. Department of Motor Vehicles*, *supra*, 152 Cal.App.4th at p. 1568), we conclude substantial evidence supports the trial court's decision. We recognize that Moser initially failed to inform plaintiff of the consequences of his refusal to submit to a chemical test and instead suggested that the only consequence for plaintiff's refusal would be that Moser would obtain a search warrant. However, while in the patrol car on the way to the CHP station, Moser clarified that he would be reading plaintiff some important information about the consequences of his refusal, and only then would plaintiff "make a decision on whether you want to complete a test." At that time, plaintiff was clearly informed that there would be other consequences should he refuse to submit to a chemical test, and that he would learn about those consequences when they arrived at the station. At the station, Moser reiterated that he was going to read plaintiff some information that was "kind of important." Moser then advised plaintiff of the consequences of refusal from the DS367 form. Moser repeated the information when plaintiff requested that he do so. When plaintiff again indicated that he did not understand Moser's advisement, Moser summarized the advisement in plain, simple terms: "It basically said . . . if you don't complete a test, the DMV will suspend your license for between one to three years."

9

Plaintiff did not indicate that was still confused. Instead, he demonstrated that he understood the consequences of his refusal when he stated: "Oh yeah, I mean, I can't live with that." Although suggesting that he did not want to incur the undesirable consequence of a suspended license, plaintiff did not " 'clearly and unambiguously manifest the consent required by the law.' " *Garcia*, *supra*, 185 Cal.App.4th at p. 82.) Moser was not required to continue admonishing plaintiff in the absence of any indication that plaintiff was still confused. (See *Morphew v. Department of Motor Vehicles*, *supra*, 137 Cal.App.3d at p. 743.)

Disagreeing, plaintiff contends that "substantial evidence demonstrates that [he] continued to express confusion" after Moser read the advisement on the DS367 form. But the issue before us is not whether substantial evidence supports reversal, but rather whether the trial court's findings are supported by substantial evidence. (*Garcia*, *supra*, 185 Cal.App.4th at pp. 81-82.) The court's findings are supported by substantial evidence.

Plaintiff further argues that this case is similar to *Thompson v. Department of Motor Vehicles*, *supra*, 107 Cal.App.3d 354 and *Hoberman-Kelly v. Valverde*, *supra*, 213 Cal.App.4th 626, but those cases are distinguishable. In *Thompson*, the officer provided the appropriate admonition, but the driver did not hear the admonition due to loud radio transmissions. (*Thompson*, at pp. 358-359.) The appellate court concluded that the warning was inadequate because the driver could not hear them. (*Id.* at pp. 362-363.) Unlike *Thompson*, here substantial evidence supports the finding that plaintiff heard and understood the admonition.

In *Hoberman-Kelly v. Valverde*, the driver was advised of her *Miranda* rights while in the patrol car, including her right to counsel. But at the station, the officer read the advisement on the DS367 form, which advised the driver that she did not have the right to call an attorney before deciding whether to consent to a chemical test. There was also a sign on the wall stating that she had the right to call an attorney. The driver expressed

confusion and frustration about the apparent conflict between her right to counsel, as expressed in the *Miranda* warnings, and the information on the DS367 form. The officer did nothing to explain the discrepancy and merely read the standardized form again. (*Hoberman-Kelly*, *supra*, 213 Cal.App.4th at p. 630.) The superior court granted the driver's petition for writ of mandate seeking to vacate the suspension order, concluding that the driver was confused, and the officer failed to make a reasonable effort to clarify the law for the driver. (*Id.* at pp. 630-631.) The appellate court agreed that the driver was confused by the advisements, and that the officer could have done more. (*Id.* at p. 633.) This case is distinguishable from *Hoberman-Kelly*. Here, Moser read the statutory advisement, reread the advisement when asked to do so, and then summarized the advisement in simple terms.

Because substantial evidence supports the trial court's decision, we affirm the judgment.

### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)


_____/s/_____
Duarte, J.

We concur:


_____/s/_____
Hull, Acting P. J.


_____/s/_____
Mauro, J.